```
                                              ┌─────────────────────────────────┐
                                              │ USDC SDNY                       │
                                              │ DOCUMENT                        │
                                              │ ELECTRONICALLY FILED            │
**UNITED STATES DISTRICT COURT**              │ DOC #: _____         │
**SOUTHERN DISTRICT OF NEW YORK**             │ DATE FILED: Feb. 19, 2014       │
                                              └─────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------- X
ST. PAUL MERCURY INSURANCE       :
COMPANY,                         :
                                 :
          Plaintiff,             :
                                 :        No. 12 Civ. 6322 (JFK)
     -against-                   :        **OPINION & ORDER**
                                 :
M&T BANK CORPORATION,            :
                                 :
          Defendant.             :
--------------------------------- X
M&T BANK CORPORATION,            :
                                 :
          Third-Party Plaintiff, :
                                 :
     -against-                   :
                                 :
THEODORE LIFTMAN INSURANCE, INC., :
                                 :
          Third-Party Defendant. :
--------------------------------- X


<u>Appearances</u>

For St. Paul Mercury Insurance Company
     McELROY, DEUTCHE, MULVANEY & CARPENTER, LLP
     By:  Richard S. Mills
          Jonathan D. Martin

For M&T Bank Corporation
     HODGSON RUSS LLP
     By:  Robert J. Lane, Jr.
          Patrick M. Tomovic

For Theodore Liftman Insurance, Inc.
     ADLER POLLOCK & SHEEHAN P.C.
     By:  John F.X. Lawler
          Stacie A. Kosinski
          James R. Oswald

**JOHN F. KEENAN, United States District Judge:**

Plaintiff St. Paul Mercury Insurance Company and Third-Party Defendant Theodore Liftman Insurance, Inc. each move for summary judgment against Defendant and Third-Party Plaintiff M&T Bank Corporation.  For the reasons that follow, the motions are granted.

## I.   Background

Plaintiff St. Paul Mercury Insurance Company ("St. Paul")[1] is a Connecticut insurance company.  Defendant and Third-Party Plaintiff M&T Bank ("M&T Bank" or "the Bank") is a New York bank holding company.  Its wholly owned subsidiaries include M&T Securities, Inc. and M&T Insurance Agency, Inc.  M&T Securities is a securities broker-dealer and a member of the Financial Industry Regulatory Authority ("FINRA").  M&T Insurance is a licensed insurance broker.  Third-Party Defendant Theodore Liftman Insurance, Inc. ("Liftman") is a Massachusetts insurance agency that provides insurance services to the investment community, including fidelity bonds underwritten by St. Paul. (Liftman Rule 56.1 Stmt. ¶¶ 1-15, 63.)

On June 24, 2008, M&T Bank executed a General Contract of Indemnity ("GCI") whereby it agreed to indemnify St. Paul for

---

[1] In their submissions, the parties refer to Plaintiff as "St. Paul" and "Travelers" interchangeably.  Because the distinction is irrelevant for the purposes of resolving the instant motions, this Opinion refers to Plaintiff consistently as "St. Paul."

any amounts paid under bonds issued to the Bank. (Compl. ¶¶ 5–9.)  One such bond was a Banker's Blanket Bond, which had a $30 million limit and a deductible of $5 million. (Traveler's Rule 56.1 Stmt. ¶ 3.)  The GCI includes a merger clause directly before the signature lines, which states in capitalized, bold-faced type:  **"WE HAVE READ THIS CONTRACT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH."** (Aug. 23, 2013 Mills Dec. Ex. A.)

In 2009, M&T Securities was subject to National Association of Securities Dealers ("NASD") Rule 3020.  That rule, which has since been superseded by FINRA Rule 4360, required M&T Securities to maintain fidelity insurance coverage, which protects a firm and its capital against losses caused by employee dishonesty or malfeasance.  On June 30, 2009, M&T Bank Assistant Vice President Cynthia Marano asked Joseph Riggie, a vice president of M&T Insurance and M&T Bank, to replace M&T Securites's fidelity bond, which was due to expire on November 1, 2009.  Riggie inquired about St. Paul's fidelity bond coverage, and was directed to contact Liftman, which could issue St. Paul's fidelity bonds. (M&T Bank Responses to Liftman Rule 56.1 Stmt. ¶¶ 1–3.)

On October 26, 2009, Liftman employee Angela Dennis provided a quote for $1 million in fidelity coverage to Riggie

3

and to Robert Chipman, another M&T Insurance employee.  In her email, Dennis noted two "subjectivities that need to be addressed" prior the issuance of the bond. (Aug. 23, 2013 Mills Dec. Ex. E.)  One of these was a proposed addendum to the GCI between St. Paul and M&T Bank (the "Addendum"), a one-page document that added the proposed fidelity bond to the list of bonds covered under the prior indemnity agreement. (<u>Id.</u> Ex. H.) Dennis stated:  "As explained in today's conversation, this is [St. Paul's] way of addressing this filler bond situation." (<u>Id.</u>)

The parties dispute the contents and significance of the telephone conversation mentioned by Dennis.  M&T Bank contends that Dennis led Riggie to believe that the Addendum would not actually confer any indemnity obligations on the Bank, but rather was meant solely to eliminate the possibility that St. Paul might have to make a double payment to the Bank. (M&T Bank Amended Ans. ¶ 56 ("Ms. Dennis expressly represented that the sole purpose and effect of the Addendum was to ensure that M&T could not recover for the same lost dollars under both the Fidelity Bond and the Banker's Blanket Bond.").)  Riggie and Chipman testified to this effect in their depositions. (Aug. 26, 2013 Lane Dec. Ex. E at 8; <u>id.</u> Ex. I at 4.)  However, Dennis has denied making any such representation. (Dennis Aff. ¶ 16.)

4

Dennis later emailed a copy of the Addendum to Chipman and requested that it be signed by two authorized officers of M&T Bank. (Aug. 23, 2013 Mills Dec. Ex. H.)  On November 6, 2009, Riggie forwarded the Addendum to the President of M&T Bank, Mark J. Czarnecki.  Riggie's cover letter to Czarnecki noted that switching to St. Paul for the fidelity bond would save the Bank $49,000 annually in premiums. (Id. Ex. J.)  Riggie's letter further states:  "As a condition of providing the bond referenced above, [St. Paul] requires that M&T Bank Corporation acknowledge that this new bond is included under the term 'Bonds' as used in their indemnity agreement." (Id.)  Czarnecki signed the Addendum, as did Corporate Secretary Marie King, before a notary on November 23, 2009. (Id. Ex. I.)

After St. Paul received the signed Addendum, it issued the $1 million fidelity bond to M&T Securities for a one-year period beginning November 1, 2009.  At M&T Bank's request, St. Paul later renewed the bond for another year, commencing on November 1, 2010. (Liftman Rule 56.1 Stmt. ¶¶ 61, 66.)

On November 23, 2010, an employee of M&T Bank notified St. Paul of a claim under the fidelity bond, arising out of an alleged theft of client funds by an M&T Securities employee. (Aug. 26, 2013 Lane Dec. Ex. X.)  St. Paul advised M&T Securities that it had received the claim, which it had assigned to employee Ben Zviti for handling.  Zviti later spoke to Manus

5

Christopher O'Donnell, an employee of M&T Bank, and advised O'Donnell that St. Paul would seek indemnity under the Addendum for any losses paid under the bond.  Apparently unaware of the Addendum, O'Donnell emailed Riggie with a series of questions. Riggie forwarded O'Donnell's email to Dennis with additional questions, although he did not mention their previous telephone conversation about the Addendum. (Aug. 23, 2013 Mills Dec. Ex. U.)

M&T Bank was thus faced with the choice of adjusting the claim itself, or allowing St. Paul to investigate and pay the claim under the fidelity bond. (Liftman Rule 56.1 Stmt. ¶ 72.) It chose the latter.  O'Donnell directed St. Paul to adjust and settle the claim, but the issue of indemnity remained unresolved. (Aug. 23, 2013 Mills Dec. Ex. S.)  St. Paul made two payments totaling $868,995.56 to settle the claim. (Liftman Rule 56.1 Stmt. ¶ 27.)

On May 8, 2012, St. Paul employee Sherrie L. Monteiro wrote to Czarnecki, care of O'Donnell, and demanded indemnification for the amounts paid out. (Id. Ex. W.)  After M&T Bank refused to indemnify, St. Paul filed the instant suit on August 17, 2012, for indemnification plus costs, statutory interest, and attorney's fees.

M&T Bank answered the complaint on October 29, 2012, and filed an amended answer on June 7, 2013.  The Bank continues to

assert that Dennis made misrepresentations to Riggie about the
purpose of the Addendum during their telephone conversation on
October 26, 2009.  Additionally, the Bank contends that the
Addendum as written causes the fidelity bond to be illegal, such
that the Addendum cannot be enforced.  On January 14, 2013, the
Bank filed a third-party complaint against Liftman seeking
indemnification or contribution for any judgment won by
St. Paul.

In the instant motions, St. Paul and Liftman each seek
entry of summary judgment against M&T Bank.  They deny that
Dennis made any misrepresentation to Riggie.  They further argue
that even if she did so, her oral statement could not modify the
written agreements between the parties, and could not be
reasonably relied upon by M&T Bank as a matter of law.

## II.  Discussion

### A.  Summary Judgment Standard

A moving party is entitled to summary judgment when the
evidence, viewed in the light most favorable to the non-movant,
shows that "there is no genuine issue as to any material fact
and that the moving party is entitled to a judgment as a matter
of law." Fed. R. Civ. P. 56(a); Vacold LLC v. Cerami, 545 F.3d
114, 121 (2d Cir. 2010).  The movant bears the initial burden of
demonstrating "the absence of a genuine issue of material fact."
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the

7

moving party meets that burden, the opposing party must then come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant." Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (alterations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

Generally, a court should not make credibility determinations about competing experts when deciding a summary judgment motion, because "credibility issues are normally resolved by a jury based on the in-court testimony." City of N.Y. v. Golden Feather Smoke Shop, Inc., No. 08 Civ. 3966, 2013 WL 3187049, at *18 (E.D.N.Y. June 20, 2013) (citing Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005)); see also Scanner Techs. Corp. v. Icos Vision Sys. Corp., 253 F. Supp. 2d 624, 634 (S.D.N.Y. 2003). However, the mere existence of conflicting experts in a case is not a per se bar on the entry of summary judgment. In re Omnicom Grp., Inc. Secs. Litig., 597 F.3d 501, 512 (2d Cir. 2010) (citing Raskin v. Wyatt Co., 125 F.3d 55, 65 (2d Cir. 1997)). If, after construing the expert

reports in the non-movant's favor, the court concludes that a report is "insufficient to permit a rational juror to find in favor of the [non-movant], the court remains free to . . . grant summary judgment." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002).

### B.   St. Paul's Motion for Summary Judgment

At the outset, the Court concludes that St. Paul has met its initial burden of demonstrating that there is no genuine issue of material fact as to its contractual indemnification cause of action.  The Second Circuit has consistently held that summary judgment may be granted in a contract dispute, but only where the language of the contract is unambiguous. E.g., Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996).  In the instant case, the GCI and the Addendum constitute a facially valid contract of indemnity that unambiguously obligates M&T Bank to reimburse St. Paul for the latter's payment of the fidelity bond claim.  In opposing summary judgment, the Bank does not contend that the GCI and Addendum are ambiguous.[2]  Instead, the Bank argues that the Addendum cannot be enforced on its terms, as set forth in the Bank's

---

[2] M&T Bank's amended answer does plead contractual ambiguity as an affirmative defense. (Amended Ans. ¶ 84.)  But the Bank has not presented any evidence or argument in support of this defense in its opposition to the instant summary judgment motions.  For the reasons discussed in Part II.B.3 of this Opinion, this defense does not suffice to defeat summary judgment.

counterclaim for fraud and its affirmative defenses.   The
question is therefore whether M&T Bank presents a genuine issue
for trial.

M&T Bank first asserts its counterclaim for fraud.
Before considering the merits, the Court notes its rejection of
St. Paul's contention that the Bank waived its right to raise
this counterclaim.   St. Paul urges that such a waiver occurred
when the Bank asked St. Paul to adjust and settle the loss under
the fidelity bond, after the Bank was on notice that St. Paul
would seek indemnity for any amounts paid under the bond.   But
for waiver to apply, the ostensibly waiving party must have
intended to relinquish a known right. Banque Arabe et
Internationale D'Investissement v. Maryland Nat'l Bank, 850
F. Supp. 1199, 1212 (S.D.N.Y. 1994) (citing City of N.Y. v.
State of N.Y., 357 N.E.2d 988, 995 (N.Y. 1976)).   Here, the Bank
never "silently acquiesced" to St. Paul's reading of the
Addendum. Prudential Ins. Co. of Am. v. BMC Indus., Inc., 630
F. Supp. 1298, 1302 (S.D.N.Y. 1986).   Indeed, the Bank
consistently disputed the applicability of the Addendum, well
before St. Paul paid the claim. See Sept. 20, 2013 Lane Dec. Ex.
B.   No waiver occurred.

M&T Bank argues that St. Paul and Liftman fraudulently
induced M&T Bank to execute the Addendum, and M&T Securities to
purchase the fidelity bond at issue.   The elements of fraudulent

inducement are (1) a material misrepresentation of a fact; (2) intent to deceive; (3) reasonable reliance on the misrepresentation; and (4) resulting damages. Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012); see also Ross v. Louise Wise Servs. Inc., 8 N.Y.3d 478, 488 (2007).  The Bank describes the fraud in two different ways. First, it alleges that the fraud was perpetrated when Dennis misrepresented that the Addendum's sole purpose was to prevent a double recovery" under the fidelity bond and the prior Banker's Blanket Bond. (M&T Bank Opp. at 1.)  Second, the Bank urges that St. Paul and Liftman represented that the fidelity bond was compliant with FINRA/NASD Rule 3020, and that this representation was fraudulent because the Addendum's indemnity requirement renders the bond noncompliant. (Id. at 13–14.)  Each formulation will be discussed in turn.

### 1.   M&T Bank's First Fraudulent Inducement Theory

M&T Bank alleges that Liftman employee Angela Dennis falsely represented to Riggie and Chipman that St. Paul "required the Addendum to prevent [M&T Securities] from 'double-dipping,' or receiving a double-recovery, for a claim" covered by both the fidelity bond and the larger Banker's Blanket Bond. (M&T Bank Opp. at 4, 11.)  The Bank further contends that it relied on this representation it deciding to execute the Addendum.

11

St. Paul argues that the Bank cannot rely upon Dennis's purported representation because the GCI and the merger clause contained therein bar the consideration of parol evidence. But the telephone conversation between Dennis, Riggie, and Chipman occurred on October 26, 2009 — more than one year after M&T Bank's officers executed the GCI. It is well settled that the parol evidence rule does not bar evidence of agreements made after the execution of an integrated contract. See, e.g., BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 778 F. Supp. 2d 375, 412 n.9 (citing Getty Ref. & Mktg. v. Linden Maint. Corp., 562 N.Y.S.2d 721, 722 (App. Div. 1990) ("Neither the parol evidence rule nor the merger clause of the underlying contract prohibits proof of a subsequent additional agreement or of a subsequent modification of the original agreement.")).

Moreover, a general merger clause — one that does not disclaim "the existence of or reliance upon specified representations" — will not bar extrinsic evidence of fraudulent inducement. E.g., Mfrs. Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993). Here, the relevant provision in the GCI is a general merger clause, because it contains only an "omnibus statement that . . . no representations have been made," and does not disclaim the specific representation upon which the Bank now relies. Id.; see Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 785 (2d Cir. 2003); Caiola v.

Citibank, N.A., 295 F.3d 312, 330 (2d Cir. 2002) ("A disclaimer
is generally enforceable only if it tracks the substance of the
alleged misrepresentation.").  Therefore, the Bank is not
prohibited from alleging that Dennis made misrepresentations
upon which it relied to its detriment.

Whether the Bank's purported reliance was reasonable as a
matter of law is a different question. See Junk v. Aon Corp.,
No. 07 Civ. 4640, 2007 WL 4292034, at *7 (S.D.N.Y. Dec. 3, 2007)
("[T]hough not an outright bar to such a claim, the existence of
a merger clause does increase a court's reluctance to determine
that a plaintiff reasonably relied on an oral representation.").
The Second Circuit has stated that courts assessing the
reasonableness of a party's reliance should consider "the entire
context of the transaction, including factors such as its
complexity and magnitude, the sophistication of the parties, and
the content of any agreements between them." Emergent Capital
Inv. Mgmt. LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195 (2d
Cir. 2003).  Where the party asserting reliance is
sophisticated, and the purported statement "relates to a
business transaction that has been formalized in a contract, New
York courts are generally reluctant to find reliance on oral
communications to be reasonable." Wurtsbaugh v. Bank of America
Sec. LLC, No. 05 Civ. 6220, 2006 WL 1683416, at *6 (S.D.N.Y.
June 20, 2006) (citations omitted).  "Reasonable reliance does

not require 'due diligence,' but the plaintiff must show
'minimal diligence' or care that 'negat[es] its own
recklessness.'" <u>Amusement Indus., Inc. v. Buchanan Ingersoll &
Rooney, P.C.</u>, No. 11 Civ. 4416, 2013 WL 628533, at *12 (S.D.N.Y.
Feb. 15, 2013) (quoting <u>Banque Franco–Hellenique de Commerce
Int'l et Mar., S.A. v. Christophides</u>, 106 F.3d 22, 27 (2d Cir.
1997)).

In the instant case, the relevant transactions concerned
significant amounts of money.  The fidelity bond at issue
provided $1 million in coverage.  The GCI covered many other
bonds issued to M&T Bank by St. Paul, including the Banker's
Blanket Bond with a $30 million limit and a $5 million
deductible.  Moreover, M&T Bank and its subsidiaries entered
into these negotiations as sophisticated parties.  The Bank is
one of the twenty largest commercial bank holding companies in
the United States, with $83 billion in assets as of December 31,
2012. (Liftman Rule 56.1 Stmt. ¶ 12.)  In addition to in-house
attorneys and insurance experts, the Bank has a subsidiary
insurance broker, M&T Insurance.  Finally, the GCI that M&T Bank
executed contains a provision stating that St. Paul's rights
"can only be impaired by a <u>written</u> rider to this Agreement
signed by an authorized employee of" St. Paul. (Aug. 23, 2013
Mills Dec. Ex. A.) (emphasis added).

After considering the evidence in light of the factors set forth in Emergent Capital, the Court concludes that no jury could find M&T Bank's purported reliance to be reasonable. Drawing all possible inferences in the Bank's favor — that is, even if Dennis misrepresented the purpose of the Addendum to Riggie, and even if Riggie silently relied upon that misrepresentation in recommending the St. Paul fidelity bond to the President of M&T Bank, and even if the Bank can be deemed to have relied on that uncommunicated misrepresentation when its officers executed the Addendum — the Bank cannot begin to demonstrate that such reliance was reasonable under the circumstances.  The GCI and Addendum together comprise an agreement between St. Paul and the Bank that is plain on its face, and a sophisticated party like the Bank simply cannot claim to have acted reasonably if it relied on an oral remark by an insurance broker that contradicts that plain meaning and all of the other correspondence between the parties.  Cf. First Nat'l Ins. Co. of Am. v. Joseph R. Wunderlich, Inc., 358 F. Supp. 2d 44, 52 (N.D.N.Y. 2004).  If Riggie truly felt that Dennis's alleged "double-dipping" representation was a deciding factor in the Bank's decision to obtain the fidelity bond from St. Paul, then the Bank "could have protected [itself] by drafting appropriate language" in the Addendum. Wurtsbaugh, 2006 WL 1683416, at *7.  Having failed to do so, the Bank's reliance was

15

unreasonable as a matter of law.  Without that essential
element, the Bank's fraud counterclaim fails.

St. Paul makes a number of other arguments in support of
its position that the Bank's counterclaim for fraudulent
inducement is meritless.  It contends that M&T Bank cannot
possibly have relied upon Dennis's alleged representation
because Riggie never disclosed it to anyone else at the Bank,
including the signatories to the Addendum.  St. Paul also
asserts that the hypothetical "double dip" scenario purportedly
mentioned by Dennis is impossible as a matter of fact, because
the $1 million limit on the fidelity bond cannot overlap with
the $5 deductible in the Banker's Blanket Bond.  If St. Paul is
correct, this would render the Bank's reliance on Dennis's
alleged misrepresentation all the more unreasonable.  But
because the Court has already concluded that any reliance on
such a representation would be unreasonable as a matter of law,
it need not address these arguments.  Nor may the Court decide,
or reserve for trial, the factual question whether Dennis
actually made such a representation to Riggie and Chipman,
because it would not affect the outcome. Anderson, 477 U.S. at
248.

### 2.   M&T Bank's Second Fraudulent Inducement Theory

M&T Bank also argues that St. Paul and Liftman induced M&T
Bank to execute the Addendum, and M&T Securities to purchase the

fidelity bond, by fraudulently representing that the bond was compliant with FINRA regulations.  The purported source of this misrepresentation is St. Paul's and Liftman's marketing of the coverage as FINRA-compliant. (M&T Bank Opp. at 13.)  Here, M&T Bank has failed to meet its burden as to the first element of fraudulent inducement:  it has not produced evidence that the fidelity bond violated FINRA regulations.  Even assuming that the Bank's proof suffices to demonstrate a genuine issue as to the other elements, its counterclaim must fail.

NASD Rule 3020, since superseded by FINRA Rule 4360, required member firms such as M&T Securities to maintain a fidelity bond that would protect against losses "including, but not limited to, those caused by the malfeasance of its officers and employees, and the effect of such losses on the member's capital." FINRA Regulatory Notice 09-44.  Together with its expert, James P. Corcoran, the Bank argues that the Addendum rendered the bond non-compliant because the GCI and Addendum together transferred the risk of loss away from the insurer (St. Paul), thereby frustrating the purpose of the coverage.

This argument is unconvincing.  It is undisputed that the relevant regulation is designed to protect the member broker-dealer and its customers. See M&T Bank Opp. at 23 ("The purpose of this rule [is] to protect a broker-dealer's capital and thus requires fidelity coverage providing true risk transfer.").  The

17

fidelity bond at issue in this case accomplished that purpose. After an employee of M&T Securities stole funds from a client, St. Paul paid the claim.  Thus, M&T Securities — the broker-dealer and member of FINRA — was protected from the malfeasance of its employee, as was its capital and its customers.  The Addendum does not return the risk to M&T Securities, as the Bank implies, but rather transfers it to the Bank.  M&T Bank is the parent company of M&T Securities, and thus is a distinct entity from the latter.  It is not broker-dealer and it is not a member of FINRA.  Under these circumstances, the Court cannot agree that the coverage failed to serve its purpose.

In his supplemental expert report, Corcoran acknowledges that M&T Bank and M&T Securities are distinct entities but offers:  "It is foreseeable, in light of accounting and regulatory principles relevant to bank intra-holding company affiliate transactions, that M&T [Bank] may be compelled to recover such payments from [M&T Securities], if made." (Corcoran Supp. Expert Report ¶ 9; see also id. ¶ 11.)  This prediction of a possibility — supported only by reference to vague, unnamed principles — is precisely the type of "unsubstantiated speculation" that cannot defeat a summary judgment motion. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

The Bank also attempts to make much of the fact that St. Paul ultimately bore no risk of loss under the fidelity bond.

18

(M&T Bank Opp. at 8, 18, 21.)  This is hardly surprising; such
is the nature of an indemnity agreement like the one M&T Bank
executed.  But the Bank offers no support for its assertion that
the fidelity bond was noncompliant with FINRA regulations
despite transferring the risk of loss away from the broker-
dealer and its customers.  But cf. Ins. Co. of N. AM. v. Pyramid
Ins. Co. of Bermuda, Ltd., No. 92 Civ. 1816, 1994 WL 88701, at
*4 (S.D.N.Y. Mar. 16, 1994) (Sotomayor, J.) (observing that
"insurance policies which do not actually transfer risk to the
insurer but that serve other purposes are very much a custom of
the industry").  Without such evidence, the Bank cannot show a
misrepresentation and therefore cannot make out a prima facie
claim of fraudulent inducement.

### 3.    M&T Bank's Affirmative Defenses

St. Paul argues that none of M&T Bank's affirmative
defenses preclude the entry of summary judgment.  "Where a
plaintiff uses a summary judgment motion, in part, to challenge
the legal sufficiency of an affirmative defense — on which the
defendant bears the burden of proof at trial — a plaintiff may
satisfy its Rule 56 burden by showing that there is an absence
of evidence to support an essential element of the non-moving
party's case." F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir.
1994) (internal quotation marks and alterations omitted).  Thus,
M&T Bank's assertion of an affirmative defense will fail to

defeat summary judgment unless the Bank demonstrates evidence
supporting each element of that affirmative defense. See In re
Livent, Inc. Noteholders Sec. Litig., 355 F. Supp. 2d 722, 729
(S.D.N.Y. 2005).  On the other hand, any evidence put forward by
the Bank will be construed in its favor, consistent with the
Rule 56 standard. See Giammettei, 34 F.3d at 54.

     The Bank pled mutual mistake as alternative to its fraud
counterclaim.  "A mutual mistake under New York law means that
both parties shared the same erroneous belief as to a material
fact, and their acts did not in fact accomplish their mutual
intent." E.g., ACA Galleries, Inc. v. Kinney, 928 F. Supp. 2d
699, 701 (S.D.N.Y. 2013) (citations and internal quotation marks
omitted).  In this case, the Bank has come forward with no
evidence that either St. Paul or Liftman shared its belief that
the Addendum meant anything other than what it says, except for
Dennis's alleged "double dip" comment to Riggie and Chipman.
Even assuming that Dennis made such a remark, as the Court must,
this lone "scintilla" of evidence is inadequate to raise a
triable issue of mutual mistake. See F.D.I.C. v. Great Am. Ins.
Co., 607 F.3d 288, 292 (2d Cir. 2010) ("[T]he non-moving party
must do more than simply show that there is some metaphysical
doubt as to the material facts, and may not rely on conclusory
allegations or unsubstantiated speculation." (citations and
internal quotation marks omitted)).

The Bank also pled the affirmative defense of unilateral mistake.  A party may not avoid a contract on the basis of a unilateral mistake unless there also was fraud — that is, a misrepresentation, intent, justifiable reliance, and damages. E.g., Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 585 (2d Cir. 2005).  Thus, this defense fails for the same reason as the Bank's fraudulent inducement counterclaim:  the Bank has failed to substantiate the essential element of justifiable (or reasonable) reliance.  The same flaw fatally undermines the Bank's estoppel defense. See Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir. 2001) (reasonable reliance is an element of equitable estoppel); accord Gaia House Mezz LLC v. State St. Ban & Trust Co., 720 F.3d 84, 90–93 (2d Cir. 2013) (applying New York law).

Additionally, the Bank pleads the affirmative defenses of illegality under (1) FINRA rules, and (2) New York state insurance law.  As discussed at length earlier, the first theory fails because the Bank has not produced evidence that that Addendum violated NASD Rule 3020.

The Bank makes two arguments based on New York law and regulations.  First, it urges that St. Paul has violated New York Insurance Law § 2307(b).  That section states, in relevant part, "[N]o policy form shall be delivered or issued for delivery unless it has been filed with the superintendent and

21

either he has approved it, or thirty days have elapsed and he
has not disapproved it as misleading or violative of public
policy." The Bank argues that this provision was violated
because "the Addendum is both a part of the Fidelity Bond and a
policy form that [St. Paul] is required to file with the
Insurance Department before use." (M&T Bank Amended Ans. ¶ 80.)

The Court disagrees with the Bank's assertion that the
Addendum to the GCI is properly construed as a policy form of
the fidelity bond at issue. But even if the Bank was correct on
that point, New York courts have held that "the failure to file
a modification to a policy form does not automatically void the
modification." Quaker Hills, LLC v. Pac. Indem. Co., No. 10 Civ.
421, 2011 WL 4343368, at *4 (S.D.N.Y. Aug. 15, 2011) (citing
Nat'l Union Fire Ins. Co. v. Ambassador Grp., Inc., 556 N.Y.S.2d
549, 553 (N.Y. App. Div. 1st Dep't 1990), appeal dismissed, 77
N.Y.2d 973 (1991)). Indeed, the Appellate Division has so held
as to § 2307, the specific section of the Insurance Law relied
upon by the Bank. See Nat'l Union Fire Ins. Co., 556 N.Y.S.2d at
553. Rather, a modification is void only if it is substantively
at odds with New York law. Id. But neither the Bank nor its
expert has pointed to a statute or regulation that the Addendum
substantively violates. They urge only that the Addendum
"violates public policy." (M&T Bank Opp. at 20; see also
Corcoran Report ¶¶ 19-20.) Such conclusory statements, absent

22

evidentiary or legal support, are of no consequence. See Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case.").

The Bank's second state-based illegality argument concerns the pricing of the fidelity bond at issue. In New York, an insurer that files its schedule rating plan with the Insurance Department must adhere to that plan in setting liability insurance rates. See N.Y. Comp. Codes R. & Regs. tit. 11, § 161.8(e)(1). M&T Bank contends that St. Paul used its filed schedule rating plan for "normal" (i.e., non-indemnified) fidelity insurance to set the rate and premium for the M&T Securities fidelity bond, and that this was unlawful. (M&T Bank Amended Ans. ¶ 84.) The Bank further argues that St. Paul acted unlawfully when it discounted the fidelity bond rate by 15 percent to reflect the indemnity agreement between the parties, because the existence of such an agreement was not included as a criterion in the schedule rating plan. See § 161.8(g) (stating that a filed schedule rating plan "must clearly indicate the objective criteria that permit upward and downward adjustment of the base rates").

St. Paul replies to these arguments by asserting that the insurance regulation at issue applies only to liability

insurance, not to fidelity bonds.  For support, it quotes the
regulatory text cited by the Bank that defines a schedule rating
plan as a "rating plan or system whereby a base rate <u>for</u>
<u>liability insurance</u> is adjusted or modified based upon a
schedule of debits and credits reflecting observable rating
characteristics, not reflected in the base rate itself, expected
to affect an individual insured's future loss exposure."
§ 161.1(aa) (emphasis added), <u>cited in</u> M&T Bank Amended Ans.
§ 83.  Notably, M&T Bank does not dispute St. Paul's assertion
of the regulation's plain meaning.  In surreply,[3] the Bank
sidesteps the regulatory language altogether and instead merely
repeats the fact that St. Paul used a schedule rating plan in
pricing the fidelity bond. (M&T Bank Surreply at 4-5.)  Absent
evidence that such use was unlawful, the Bank's illegality
defense necessarily fails.

Finally, the Bank contends that its remaining eight
affirmative defenses are "sound." (M&T Bank Opp. at 24.)  This
flat statement does not suffice to defeat a properly supported
summary judgment motion.  A party opposing such a motion "may
not rely merely on allegations or denials in its own pleading;
rather, its response must . . . set out specific facts showing a

---

[3] Although this Court does not ordinarily accept surreply briefing,
Defendant sought and obtained leave to file its five-page surreply in
this matter. (ECF No. 115.)

genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see United States v. Livecchi, No. 03 Civ. 6451, 2005 WL 2420350, at *15 (W.D.N.Y. Sept. 30, 2005) ("[D]efendants have failed to address any of the remaining affirmative defenses in their motion papers and thus have not demonstrated the existence of any genuine issue of material fact as to any of the defenses.  On this basis alone, they should not preclude summary judgment."). Accordingly, summary judgment is entered in favor of St. Paul.

### C.  Liftman's Motion for Summary Judgment

As noted earlier, M&T Bank filed a third-party complaint against Liftman seeking indemnification or contribution for any judgment won by St. Paul.  The complaint pleads causes of action for fraudulent misrepresentation, negligent misrepresentation, and breach of warranty.

In its motion for summary judgment, Liftman argues that M&T Bank cannot succeed on either its fraudulent misrepresentation or negligent misrepresentation claims because in both instances, the element of reasonable reliance is missing.  For the reasons discussed at length in Part II.B.1 of this Opinion, the Court has concluded that even if Liftman employee Angela Dennis misrepresented the purpose of the Addendum to Riggie and Chipman, any reliance on that representation by M&T Bank was unreasonable as a matter of law.  Thus, Liftman is correct that

it is entitled to summary judgment as to the Bank's misrepresentation claims.

Liftman further argues that the Bank's breach of warranty claim is meritless because, among other reasons, it is an improper refashioning of the Bank's misrepresentation allegations. See also 69 N.Y. Jur. 2d Ins. § 1216 (explaining that "representations are part of the proceedings which propose the contract, while warranties are a part of the completed contract, either expressly inserted therein or appearing by express reference to statements expressly made a part thereof"). The Bank has chosen not to dispute Liftman's contentions in this regard.  Indeed, since its opposition brief makes no mention of its breach of warranty claim, the Bank has not demonstrated the existence of a genuine dispute of material fact.  Summary judgment for Liftman is therefore appropriate.

### D.   St. Paul's Motion for Court Costs and Attorney's Fees

Finally, St. Paul moves for reimbursement of its court costs and attorney's fees arising out of this action.  "Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003).  Here, St. Paul relies on a provision of the GCI that states M&T Bank's promise to

26

"indemnify and exonerate [St. Paul] from and against any and all loss, cost and expense of whatever kind which it may incur or sustain as a result of . . . the enforcement of this Agreement, including unpaid premiums, interest, court costs and counsel fees." (Aug. 23, 2013 Mills Dec. Ex. A.)  This provision makes "unmistakably clear" the parties' intention to shift the responsibility for St. Paul's court costs and attorney's fees to M&T Bank in the event of the latter's breach. Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492 (1989).  M&T Bank does not argue to the contrary. See L&L Wings, Inc. v. Marco-Destin Inc., 756 F. Supp. 2d 359, 368 (S.D.N.Y. 2010). Accordingly, St. Paul's motion is granted.  Within fourteen days of the date of this Opinion, St. Paul is directed to submit records demonstrating its costs and fees in this matter, including the date, the hours expended, and the nature of the work done by each attorney.  Any response by M&T Bank must be submitted no later than fourteen days thereafter.

## III. Conclusion

For the foregoing reasons, St. Paul's motion for summary judgment and Liftman's motion for summary judgment are each granted. The matter will remain open pending the determination of the proper amount of costs and fees to be paid to St. Paul by M&T Bank.

**SO ORDERED.**

Dated:     New York, New York
           February **19** , 2014

John F. Keenan
United States District Judge