```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- X
ST. PAUL MERCURY INSURANCE         :
COMPANY,                           :
                                   :
           Plaintiff,              :
                                   :   No. 12 Civ. 6322 (JFK)
    -against-                      :      OPINION & ORDER
                                   :
M&T BANK CORPORATION,              :
                                   :
           Defendant.              :
---------------------------------- X
M&T BANK CORPORATION,              :
                                   :
           Third-Party Plaintiff,  :
                                   :
    -against-                      :
                                   :
THEODORE LIFTMAN INSURANCE, INC.,  :
                                   :
           Third-Party Defendant.  :
---------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Apr. 11, 2014

Appearances

For St. Paul Mercury Insurance Company
    McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
    By:  Richard S. Mills

For M&T Bank Corporation
    HODGSON RUSS LLP
    By:  Robert J. Lane, Jr.

For Theodore Liftman Insurance, Inc.
    ADLER POLLOCK & SHEEHAN P.C.
    By:  John F.X. Lawler

**JOHN F. KEENAN, United States District Judge:**

    By Opinion and Order dated February 19, 2014, this Court granted summary judgment for Plaintiff St. Paul Mercury Insurance Company and Third-Party Defendant Theodore Liftman

Insurance, Inc. against Defendant and Third-Party Plaintiff M&T Bank Corporation.  This Opinion resolves the parties' dispute over the attorney's fees and costs owed to St. Paul by M&T Bank.

## I.   Background

The Court presumes familiarity with the facts of this litigation, which are fully set forth in its February 19 Opinion. See <u>St. Paul Mercury Ins. Co. v. M&T Bank Corp.</u>, No. 12 Civ. 6322, 2014 WL 641438 (S.D.N.Y. Feb. 19, 2014).  Briefly stated, Plaintiff St. Paul Mercury Insurance Company ("St. Paul") brought the instant action against Defendant and Third-Party Plaintiff M&T Bank ("M&T Bank" or "the Bank") for indemnification on the basis of a June 24, 2008 General Contract of Indemnity (the "GCI") between the parties.  M&T Bank later filed a third-party complaint against Third-Party Defendant Theodore Liftman Insurance, Inc. ("Liftman"), seeking indemnification or contribution for any judgment won by St. Paul.  Ultimately, the Court determined that the GCI was enforceable against the Bank, such that it must reimburse St. Paul for monies St. Paul paid out under a bond included in the GCI.

St. Paul also moved for attorney's fees and court costs as part of its summary judgment motion.  The Court ruled as follows:

> "Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003). Here, St. Paul relies on a provision of the GCI that states M&T Bank's promise to "indemnify and exonerate [St. Paul] from and against any and all loss, cost and expense of whatever kind which it may incur or sustain as a result of . . . the enforcement of this Agreement, including unpaid premiums, interest, court costs and counsel fees." (Aug. 23, 2013 Mills Dec. Ex. A.) This provision makes "unmistakably clear" the parties' intention to shift the responsibility for St. Paul's court costs and attorney's fees to M&T Bank in the event of the latter's breach. Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492 (1989). M&T Bank does not argue to the contrary. See L&L Wings, Inc. v. Marco-Destin Inc., 756 F. Supp. 2d 359, 368 (S.D.N.Y. 2010). Accordingly, St. Paul's motion is granted. Within fourteen days of the date of this Opinion, St. Paul is directed to submit records demonstrating its costs and fees in this matter, including the date, the hours expended, and the nature of the work done by each attorney. Any response by M&T Bank must be submitted no later than fourteen days thereafter.

St. Paul Mercury Ins. Co., 2014 WL 641438, at *11.

On March 5, 2014, counsel for St. Paul submitted a declaration supporting its application. According to this declaration, St. Paul seeks:

(1) indemnification, as discussed, in the amount of $868,995.26;

(2) pre-judgment interest on the amount to be indemnified, totaling $172,620.39;

3

    (3)    reimbursement for attorney's fees incurred by counsel for St. Paul, the law firm McElroy, Deutsch, Mulvaney & Carpenter, LLP ("MDMC"), in the amount of $276,999.22;

    (4)    litigation expenses and costs, totaling $4,593.94;

    (5)    reimbursement for fees charged by St. Paul's expert, Thomas B. Considine, in the amount of $62,860.00;

    (6)    reimbursement for the attorney's fees and expenses paid by St. Paul to counsel for Liftman, the law firm Adler Pollock & Sheehan, P.C., in the amount of $99,028.17; and

    (7)    unspecified fees incurred preparing the instant fee application and litigating this matter on appeal.

(Mills Dec. at 11–12.)

    Notably, M&T Bank only disputes the propriety of the fifth and sixth items above. As to Considine, St. Paul's expert, the Bank urges that his fees are excessive and should be reduced. The Bank also contends that neither this Court's previous ruling nor the GCI contemplate reimbursement of the attorney's fees and costs incurred by Liftman.

## II. Discussion

    The original amount of St. Paul's payments to be indemnified by M&T Bank ($868,995.26) is not in dispute. Nor has M&T Bank objected to St. Paul's calculation of pre-judgment interest ($172,620.39), nor to its request for attorney's fees incurred by MDMC ($276,999.22) and litigation expenses

4

($4,539.94). The application for those amounts is therefore granted as unopposed. The remaining items are discussed in turn below.

### A. St. Paul's Expert Fees

Even where a court has previously decided that a party is entitled to reasonable fees and costs, the burden remains on that party to demonstrate that the amounts requested are reasonable. See, e.g., Matteo v. Kohl's Dep't Stores, Inc., No. 09 Civ. 7830, 2012 WL 5177491, at *2 (S.D.N.Y. Oct. 19, 2012), aff'd, 533 F. App'x 1 (2d Cir. 2013) (summary order). It follows that, where work is performed on an hourly basis, both the hourly rate and the amount of time expended must be reasonable. In assessing the reasonableness of an expert witness's fees, the court should look to such factors as the expert's area of expertise and education; the prevailing rates for comparable experts; and the nature and complexity of the issues about which the expert's insight was sought. See, e.g., Frederick v. Columbia Univ., 212 F.R.D. 176, 177 (S.D.N.Y. 2003); cf. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008) (in the attorney's fees context, the district court should "bear in mind all of the case-specific variables that we and other courts have identified as relevant"). "In the face of very limited evidence, a court may, in its discretion, simply apply an

5

across-the-board reduction of expert's fees." Matteo, 2012 WL 5177491, at *5.

In the instant matter, St. Paul seeks to recover fees incurred by its expert, Thomas B. Considine, in the amount of $62,860.00. Considine prepared one expert report in connection with St. Paul's summary judgment motion in this case. St. Paul now contends that it only went to the expense of retaining Considine after M&T Bank filed an expert report of its own. St. Paul further notes that it tried "to avoid incurring the expense associated with obtaining an expert witness" by moving to strike the Bank's expert report, but that motion was denied by Magistrate Judge Netburn. (Mills Dec. ¶ 32; see ECF Nos. 69-72.) A review of Considine's invoice confirms that he did not begin billing St. Paul for services until July 9, 2014, which is indeed subsequent to the preparation and filing of M&T Bank's expert report.

M&T Bank argues that the fees incurred by St. Paul's expert are excessive. The Bank contends that Considine's fees totaling $62,680.00 for one expert report are unreasonably high in light of the fact that the Bank's own expert, James P. Corcoran, charged only $40,875.00 to prepare both an initial and supplemental expert report. Notably, the Bank does not explicitly argue that Considine's hourly rate of $700 is excessive. Perhaps this is because M&T Bank's own expert

charged an even higher hourly rate of $750. (Lane Dec. Ex. A.) It also bears mentioning that the Bank does not make a specific recommendation to the Court regarding Considine's fees; it asks only that "the Court reduce the total expert fees recoverable." (Lane Dec. ¶ 16.)

At the outset, the Court observes that Considine's invoice contains two discrepancies, which have apparently gone unnoticed by the parties.  Both the very first and the very last entries state "No charge" in the total column, suggesting that Considine performed the work described in those entries without the expectation of payment.  But the subtotal and balance on the bottom of the invoice reflect that St. Paul was indeed charged for both of these entries.  The Court assumes that this $1,330 discrepancy is error rather than deceit, and subtracts that amount from the $62,860 subtotal to arrive at a maximum possible award of $61,530.

The Court now turns to the factors to be considered in gauging the reasonableness of the requested award.  First, there is no dispute that the issues raised in this litigation were moderately complex, concerning "the correct interpretation and application of FINRA and New York Insurance regulations pertaining to fidelity insurance policies," among other more common issues. (Mills Dec. ¶ 26.)  Considine's education and experience made him well qualified as an expert in this matter.

7

He has both a law degree and an undergraduate degree in business administration, and his relevant experience includes service as a Commissioner in the New Jersey Department of Banking and Insurance, as well as over sixteen years in various roles at Metropolitan Life Insurance Company.  As to the prevailing rates of comparable experts, St. Paul offers only that M&T Bank's own expert charged $750 per hour, which is $50 per hour higher than the rate Considine billed to St. Paul.

Although Considine's hourly rate is marginally lower than Corcoran's, M&T Bank points out that Considine billed about 50 percent more to write one expert report than Corcoran billed to write two. (Lane Dec. ¶¶ 14–15.)  This is true enough, but not particularly compelling.  First, the Court observes that Corcoran's two reports together total only fifteen pages, whereas Considine's single report is thirty-one pages.  To be sure, quantity does not necessarily confer quality, and a concise expert report may well be persuasive.  Corcoran's reports, however, were not. See St. Paul Mercury Ins. Co., 2014 WL 641438, at *7; id. at *9.  The Court therefore finds the Bank's comparison to be of limited use.  Brevity may be the soul of wit, but another cliché proves truer in this case:  you get what you pay for.

The Court nevertheless concludes that $61,530 is an unreasonable fee for the preparation of a single expert report

in this matter.  In so concluding, the Court observes that Considine's hourly rate is more than three times higher than that of the lead partner handling this case for St. Paul, Richard S. Mills. (Mills Dec. ¶ 9.) See Matteo, 2012 WL 5177491, at *6 (declining to award higher hourly rate for expert than for lead attorney absent "truly compelling" showing); cf. Arbor Hill, 522 F.3d at 190 ("The reasonable hourly rate is the rate a paying client would be willing to pay.").  Indeed, St. Paul has not cited any cases from this district wherein an expert was so handsomely compensated, and this Court is aware of none.

Moreover, Considine's invoice indicates that he expended nearly eighty-eight hours preparing the report, including over twelve hours spent on dictation alone.  A review of the invoices prepared by St. Paul's counsel reveals that eighty-eight hours is more time than Mills (the lead partner) spent on the summary judgment briefs themselves.  Because St. Paul has not demonstrated the reasonableness both of Considine's hourly rate and the amount of time billed, the Court determines that it is appropriate to reduce St. Paul's request by 30 percent. See, e.g., Penberg v. HealthBridge Mgmt., No. 08 Civ. 1534, 2011 WL 1100103, at *15 (E.D.N.Y. Mar. 22, 2011) (15 percent reduction); Watson v. E.S. Sutton, Inc., No. 02 Civ. 2739, 2007 WL 2245432, at *3 (S.D.N.Y. Aug. 3, 2007) (50 percent reduction).  M&T Bank

must therefore reimburse St. Paul $43,071 for the cost of retaining and utilizing Considine's services.

### B.     Costs and Fees Incurred by Liftman

St. Paul also seeks reimbursement of $99,028.17 it paid to Liftman's counsel, Adler Pollock & Sheehan P.C., to defend Liftman against M&T Bank's third-party action for indemnification.  St. Paul and Liftman assert in their attorney's declarations that the agency agreement between them calls for St. Paul to indemnify Liftman for fees and expenses incurred in connection with Liftman's services. (Mills Dec. ¶ 36; Lawler Dec. ¶ 7.)  However, neither St. Paul nor Liftman supplied the Court with a copy of that agency agreement on March 6, 2014, the date that all relevant records were due.  The agreement was not filed until March 28, after M&T Bank argued in its opposition declaration that the agreement's absence doomed the request. (Lane Dec. ¶ 11 ("Counsel's description of an out-of-court document is clearly inadmissible hearsay and is patently insufficient to satisfy St. Paul's burden to clearly establish its right to indemnity for Liftman's costs.").)  The Bank also notes that neither the GCI nor this Court's February 19 Opinion specifically contemplate the requested reimbursement.

Indemnification clauses should be read to implement the parties' intentions, and must be strictly construed to avoid inferring duties that they did not intend to create. Bank of New

10

York Trust Co., N.A. v. Franklin Advisers, Inc., 726 F.3d 269, 283-84 (2d Cir. 2013) (citing Oscar Gruss & Son Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003)); accord Levine v. Shell Oil Co., 269 N.E.2d 799, 801-02 (N.Y. 1971).  In New York, "[a]n indemnification agreement will not be read to impose obligations upon the indemnitor which are neither disclosed at the time of its execution nor reasonably within the scope of its terms and the overall intendment of the parties at the time of its making." Tokyo Tanker Co. Ltd. v. Etra Shipping Corp., 536 N.Y.S.2d 75, 76 (1st Dep't 1989).

 Here, the Court agrees with M&T Bank that St. Paul's request for reimbursement of Liftman's attorney's fees must be denied.  Most important, the relevant language in the GCI is completely silent as to the costs and fees of St. Paul's agents.  St. Paul urges that the GCI's reference to "loss, cost and expense" allows for such recovery.  However, such broad language does not suffice to demonstrate that the parties intended for the Bank to reimburse Liftman for its attorney's fees. Cf. Zissu v. Bear, Stearns & Co., 805 F.2d 75, 79 (2d Cir. 1986).  Moreover, New York courts have cautioned that the language of an indemnity provision "should not be extended to include damages which are neither expressly within its terms nor of such character that it is reasonable to infer that they were intended to be covered." Tokyo Tanker Co., 536 N.Y.S.2d at 77-78 (quoting

11

<u>Niagara Frontier Transp. Auth. v. Tri-Delta Constr. Corp.</u>, 487 N.Y.S.2d 428, 431 (4th Dep't), <u>aff'd</u>, 65 N.Y.2d 1038 (1985)). Here, St. Paul has presented no evidence that M&T Bank knew or should have inferred that St. Paul's agent's expenses would be included in the GCI. Nor, for that matter, did St. Paul mention that it sought to recover Liftman's expenses as well as its own when it made its prior motion to this Court. <u>See</u> St. Paul Summary Judgment Moving Br. at 24–25. Accordingly, the Court rejects St. Paul's expansive reading of the GCI and denies the request.

### C. Unspecified, Extant Fees

Additionally, St. Paul seeks to recover for unspecified fees incurred in preparing the instant fee application. Under New York law, "a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." <u>F.H. Krear & Co. v. Nineteen Named Trustees</u>, 810 F.2d 1250, 1266 (2d Cir. 1987) (citing <u>Doyle v. Allstate Ins. Co.</u>, 136 N.E.2d 484, 487 (N.Y. 1956)); <u>see</u> <u>Campbell v. Mark Hotel Sponsor, LLC</u>, No. 09 Civ. 9644, 2012 WL 4360011, at *3 (S.D.N.Y. Sept. 13, 2012). "Of course, it is possible to contract for such an allowance but, as it is an agreement contrary to what is usual, specific language would be needed to show such an agreement." <u>F.H. Krear</u>, 810 F.2d at 1267 (citing <u>Swiss Credit Bank v. Int'l Bank, Ltd.</u>, 200

12

N.Y.S.2d 828, 830–31 (N.Y. Sup. Ct. 1960)); see <u>Banca Della Svizzera Italiana v. Cohen</u>, 756 F. Supp. 805, 809–10 (S.D.N.Y. 1991).  In this case, the GCI contains no specific language that would support St. Paul's request for "fees on fees." <u>U.S. for Use of Fid. & Deposit Co. of Md. v. Suffolk Constr. Co.</u>, No. 96 Civ. 2413, 2000 WL 10412, at *3 (S.D.N.Y. Jan. 3, 2000).  St. Paul instead cites <u>Weyant v. Okst</u>, 198 F.3d 311 (2d Cir. 1999), to support its position.  But that case concerned a fee application under 42 U.S.C. § 1988, and is therefore inapposite.  St. Paul's request is therefore denied.

Finally, St. Paul seeks "any further expenses that may potentially be incurred (by MDMC and/or Liftman's counsel) if/when the Defendant opposes the fee application and/or seeks to appeal the Court's February 19, 2014 decision." (Mills Dec. ¶ 39.)  Because M&T Bank's opposition occasioned no reply from St. Paul, that part of the request is denied.  The application for reimbursement of fees by Liftman's counsel is denied for the reasons set forth in Part II.B above.  The request for fees arising out of any appeal in this matter is denied as premature.

### III. Conclusion

For the foregoing reasons, judgment is awarded to St. Paul in the amount of $1,366,279.81, as follows:

- Indemnification totaling $868,995.26;
- pre-judgment interest totaling $172,620.39;
- attorney's fees totaling $276,999.22;
- litigation expenses and costs, totaling $4,593.94; and
- Considine's fees, limited to $43,071.00.

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated:   New York, New York
         April 11, 2014

_____
John F. Keenan
United States District Judge